UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
DENAN AINSLEY,

                    Petitioner,

   -against-                         **MEMORANDUM & ORDER**
                                          18–CV–3738 (PKC)

JAMIE LA MANNA, Superintendent,

                    Respondent.

------------------------------------------------------X
PAMELA K. CHEN, United States District Judge:

Denan Ainsley ("Petitioner"), appearing *pro se*,[1] petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his convictions and aggregate sentence entered in the Supreme Court of the State of New York, Kings County. For the reasons set forth below, the petition is denied in its entirety.

## BACKGROUND

On February 13, 2012, Petitioner left a nightclub called "Club Trendz" (the "club") in Brooklyn, New York. (Trial Transcript ("Tr."), Dkts. 12-1 & 12-2, at ECF[2] 663.)[3] Petitioner subsequently fired two shots at Gabre Hay (the "victim"), striking him in the torso but not ultimately killing him. (*Id.* at ECF 184, 663, 701.) Petitioner was charged, under Kings County

---

[1] Because Petitioner is *pro se*, the Court liberally construes his petition and interprets it "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation and italics omitted). However, the Court notes that it "'need not act as an advocate for'" Petitioner. *Curry v. Kerik*, 163 F. Supp. 2d 232, 235 (S.D.N.Y. 2001) (quoting *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998)).

[2] "ECF" refers to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] Because Petitioner has already "been found guilty of the crime[s] charged," the Court will construe the facts "in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Indictment Number 2366/2012, with Attempted Murder in the Second Degree; Assault in the First, Second, and Third Degrees; and Criminal Possession of a Weapon in the Second and Fourth Degrees. (State Post-Conviction Record ("R."), Dkts. 12-4–12-9, at ECF 956.) Following a jury trial, Petitioner was convicted of Attempted Murder in the Second Degree and Criminal Possession of a Weapon in the Second Degree. (Tr., at ECF 761.) After denying Petitioner's motion to set aside the verdict (*id.* at ECF 783), the trial court sentenced Petitioner to concurrent twelve-year prison terms on each count, followed by five years of post-release supervision (*id.* at ECF 790).

On direct appeal, the New York Appellate Division, Second Department ("Second Department") affirmed Petitioner's judgment of conviction. *People v. Ainsley*, 18 N.Y.S.3d 181 (N.Y. App. Div. 2015). Petitioner then sought leave to appeal to the New York Court of Appeals, which denied his request. *People v. Ainsley*, 51 N.E.3d 567 (N.Y. 2016). Thereafter, Petitioner moved pursuant to N.Y. Crim. Proc. Law § 440.10 to vacate the judgment of conviction (State Post-Conviction Record ("R."), Dkt. 12, at ECF 937), which the trial court denied (*id.* at ECF 993–1000). Petitioner did not seek leave to appeal the trial court's denial of his § 440.10 motion and thereafter commenced the instant *habeas* action in this Court.

## STANDARD OF REVIEW

Section 2254 provides that a *habeas corpus* application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v.*

*Keane*, 294 F.3d 401, 410 (2d Cir. 2002) (quotations omitted). "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013); *see id.* at 301–02 (explaining that "the presumption that the federal claim was adjudicated on the merits may be rebutted" by either (1) "the habeas petitioner (for the purpose of showing that the claim should be considered by the federal court *de novo*)"; or (2) "the State (for the purpose of showing that the federal claim should be regarded as procedurally defaulted)").

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (quotation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in [Supreme Court cases]," or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (quotations omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (quotation omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)); *see also Eze v. Senkowski*, 321 F.3d 110,

121 (2d Cir. 2003) (observing that where a state court adjudicates a federal constitutional claim on the merits, "we must apply AEDPA deference"). Under this standard, the Court must "assess whether the state court's decision was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Garner v. Lee*, 908 F.3d 845, 861 n.14 (2d Cir. 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## DISCUSSION

### I.    Timeliness

#### A.  Delay in Filing

A petitioner must file an application for a writ of *habeas corpus* within one year of his conviction becoming final. 28 U.S.C. § 2244(d)(1)(A). A conviction becomes final when the "time to seek direct review in the United States Supreme Court by writ of certiorari expires," *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (quotation and brackets omitted); "that is, ninety days after the final determination by the state court," *Toxey v. N.Y. State Div. of Parole*, No. 14-CV-610 (JPO) (RLE), 2017 WL 10398212, at *4 (S.D.N.Y. Nov. 8, 2017). A "properly filed" state collateral proceeding tolls the deadline on filing a writ of *habeas corpus* from the time the *pro se* petitioner initiates the state collateral proceeding before a prison official. *Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005). Under these circumstances, the limitations period is tolled during the entire pendency of the collateral proceeding, which includes all "properly filed"

4

appeals and the time between a court order and appeal of that order, until further appellate review under state law is unavailable. *Carey v. Saffold*, 536 U.S. 214, 220 (2002); *Felder v. Goord*, 564 F. Supp. 2d 201, 212 n.4 (S.D.N.Y. 2008).

In this case, the Second Department affirmed Petitioner's judgment of conviction on direct appeal on October 28, 2015. By certificate dated February 22, 2016, the New York Court of Appeals denied Petitioner permission to appeal further. Thereafter, Petitioner had ninety days to seek direct review by the United States Supreme Court by writ of certiorari. *Moon v. Rock*, No. 07-CV-5026 (SJF), 2008 WL 5272469, at *2 (E.D.N.Y. Dec. 13, 2008) (citing *Williams*, 237 F.3d at 151). Accordingly, the one-year limitations period for federal *habeas* review began to run on May 22, 2016.

On May 10, 2017—exactly twelve days before the one-year limitations period would have expired—Petitioner initiated a *coram nobis* action in state court pursuant to N.Y. Crim. Proc. Law § 440.10. (R., at ECF 937.) This commencement of a collateral attack on his judgment of conviction under state law effectively tolled the limitations period for *habeas* review. *Fernandez*, 402 F.3d at 114. On July 24, 2017, the trial court denied Petitioner's § 440.10 motion without a hearing. (R., at 993–1000.) Petitioner never sought leave to appeal from the denial of his § 440.10 motion to vacate the judgment. As Petitioner did not seek leave to appeal the trial court's denial of his *coram nobis* petition and cannot now do so,[4] his *coram nobis* petition was pending for federal

---

[4] Based on Petitioner's failure to seek to leave to appeal denial of his *coram nobis* petition, there is conflicting authority as to whether the Court should decline to consider his claims under *habeas* review for failure to exhaust state remedies. *Compare Pope v. Annucci*, No. 17-CV-3191 (BMC), 2017 WL 2684021, at *2 (E.D.N.Y. June 21, 2017) ("[P]etitioner has failed to seek leave to appeal the § 440 court's denial of his motion, which is also required to exhaust any claims raised in a collateral proceeding."), *with Marino v. Miller*, No. 97-CV-2001 (JG), 2002 WL 2003211, at *9 (E.D.N.Y. Aug. 22, 2002) ("At this point, if [Petitioner] were to seek leave to appeal to the Appellate Division, his application would be denied as time-barred. Thus, his claim is deemed

*habeas* purposes from the date on which it was filed in the trial court until the date that his time to seek leave to appeal expired. *George v. Berbary*, No. 05-CV-2199 (ARR), 2007 WL 2769492, at *2 (E.D.N.Y. Sept. 21, 2007). Allowing five days for mailing of the order plus thirty days for seeking leave to appeal, Petitioner's time to appeal the denial of his *coram nobis* petition expired on August 28, 2017. *See* N.Y. Crim. Proc. Law § 460.10(1)(a) (providing that such an appeal must be made within thirty days). Before the *coram nobis* petition was filed, Petitioner had twelve days remaining before the one-year limitations period for *habeas* review would expire. Resuming the limitations period after the passing of Petitioner's deadline to seek leave to appeal the trial court's denial of his *coram nobis* petition would result in his one-year limitations period ending on September 11, 2017.[5]

---

exhausted." (citation omitted)). The Court finds the approach taken by the court in *Crawford v. Artuz*, 116 F. Supp. 2d 442 (S.D.N.Y. 2000), particularly persuasive:

> Under the exhaustion doctrine, [the petitioner] would typically be required to exhaust the claims in state court collaterally by way of a § 440.10 motion. When a prisoner's diligent efforts to exhaust in the state court have been unduly frustrated, however, the prisoner need not take additional steps in the state court before he may be heard in the federal courts.

*Id.* at 445. For the reasons stated *infra*, the Court concludes that any exhaustion defense is rebutted by Petitioner's demonstration that his efforts at exhaustion were unduly frustrated by his post-conviction counsel's neglect, and that he pursued diligent efforts to exhaust, despite his failure to ultimately do so. *See Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) ("For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989))).

[5] Actually, twelve days from August 28, 2017 would be September 9, 2017. But because September 9, 2017 was a Saturday, the Court will use the September 11, 2017 date.

Petitioner signed his *habeas* petition on March 28, 2018 and the petition was placed in the prison mailing system[6] on June 5, 2018. (Petition for *Habeas Corpus* ("Pet."), Dkt. 1, at ECF 15.) The petition was received by the Court and docketed on June 27, 2018. (*Id.* at ECF 1.) The earliest of these dates was more than six months after the limitations period expired on September 11, 2017. Based on the foregoing, Petitioner's *habeas* petition would, under normal circumstances, be time-barred. However, by a docket order dated October 3, 2018, this Court referenced a letter motion filed by Petitioner (Letter Motion for Extension of Time to File Affirmation ("Letter Motion"), Dkt. 6) in which Petitioner identified compelling reasons for his failure to comply with the one-year limitations period.[7] The Court will now engage in a more fulsome analysis of this equitable tolling issue.

**B. Equitable Tolling**

The Supreme Court has held that the one-year limitations period established under § 2244(d)(1) of AEDPA is "subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). In order to provide context to the Court as to why Petitioner failed to seek leave to appeal the denial of his *coram nobis* motion by the August 28, 2017 deadline, and failed to commence his *habeas* action by the September 11, 2017 deadline, Petitioner explains:

> In July of 2017, petitioner's wife, Twana Ainsley, received a notice from [post-conviction counsel] Mr. Greenwald's office, via USPS, that the [§ 440.10 *coram nobis*] motion was denied.

---

[6] Petitioner's letter motion identifies institutional obstacles preventing the timely mailing of correspondence from inmates at Green Haven Correctional Facility, where Petitioner is currently incarcerated. (Letter Motion, at ECF 35.)

[7] The Court was particularly moved by a note from Petitioner's mother, affixed to the Letter Motion, describing how Petitioner's retained counsel acted in a neglectful manner that prevented Petitioner from exercising his *habeas corpus* rights in a timely fashion. (Letter Motion, at ECF 38–39.)

In August of 2017, petitioner and his wife tried to contact Mr. Greenwald's office by Phone and email seeking to discuss the next steps being taken by the firm; No [response] was given. Finally, in September of 2017, petitioner was able to reach Mr. Greenwald himself who informed the petitioner that there was nothing more he could do for him and ended the phone conversation.

This put pressure and stress on petitioner to seek legal assistance in the Law Library. Petitioner had r[un] out of funds to retain a lawyer on the outside which left him in a position to try and learn the Federal procedures and proceedings on his own. Petitioner being a 'lay person' to the Federal Rules and regulations, took more time than expected. Even if Mr. Greenwald had no intention[ of] filing the Federal Habeas petition for the petitioner, he still breached the contract between the petitioner and himself by not at least requesting a 'stay' to the Court, in writing or email to make the transaction official while handling the [§ 440.10] motion for petitioner.

(Letter Motion, at ECF 35.) Additionally, Petitioner's wife submitted a notarized letter stating that the following events occurred:

In late August 2017 I scheduled an appointment with Mr. Greenwald['s] office to pick up my husband Denan [Ainsley's] court records and was astonished and surprised to find multiple emails from Kings County Supreme Court asking Mr. Greenwald to send the affidavit he mentioned in the [§ 440.10] motion. Mr. Greenwald['s] office responded by sending the notarized affidavits to the court days within [*i.e.*, after] receiving [the] final [] decision. . . . I find this to be highly unethical and highly unprofessional that an attorney hired to pursue justice in this case would maliciously disregard protocol. Any[] first year law student would know that you have to submit your affidavit with any motion of filing to any court of law.

(*Id.* at ECF 44.)

The Court concludes that these circumstances suffice to equitably toll the limitations period under AEDPA. Regarding equitable tolling on the basis of attorney neglect, the Second Circuit has remarked:

Because a lawyer is the agent of his client, the client generally must bear the risk of attorney error. Therefore, a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling. Rather, in order to rise to the level necessary to constitute an extraordinary circumstance for purposes of tolling § 2254's limitation period, attorney neglect must be so egregious as to amount to an effective abandonment of the attorney-client relationship.

*Rivas v. Fischer*, 687 F.3d 514, 538 (2d Cir. 2012) (quotations and citations omitted).

First, the Court concludes that Petitioner has demonstrated that "extraordinary circumstances stood in [Petitioner's] way and prevented timely filing." *Holland*, 560 U.S. at 649 (quotation omitted); *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 1994). Petitioner's post-conviction counsel "essentially disappeared" in July of 2017, after Petitioner's *coram nobis* petition was denied in trial court. *Rivas*, 687 F.3d at 539. As the August 28, 2017 deadline for seeking leave to file a notice of appeal on the denial of the *coram nobis* motion and the September 11, 2017 deadline for filing the *habeas* petition in federal court approached, post-conviction counsel was completely nonresponsive to Petitioner and his family and falsely suggested to them that attempts had been made to receive an extension on the relevant deadlines. (Letter Motion, at ECF 34–35, 43.) *See Vasquez v. Greiner*, 68 F. Supp. 2d 307, 310 (S.D.N.Y. 1999) (finding that attorney's failure to notify prisoner of New York Court of Appeals ruling was an extraordinary circumstance); *Baskin v. United States*, 998 F. Supp. 188, 190 (D. Conn. 1998) ("It would be grossly inequitable to bar petitioner's ineffective assistance of counsel claim on the basis that counsel's error permitted the statute of limitations to run.")

Second, Petitioner has demonstrated that "he himself made reasonably diligent attempts to ensure that his petition was filed on time." *Doe v. Menefee*, 391 F.3d at 175. Petitioner made multiple attempts to contact his counsel, by phone and e-mail, in August of 2017 to discuss the next steps he would take in challenging his conviction after his *coram nobis* petition was denied. (Letter Motion, at ECF 35.) In September of 2017—after the deadline to seek leave to appeal denial of his *coram nobis* motion had passed and the deadline to file the *habeas* petition was nigh—counsel finally responded to Petitioner by informing him that there was nothing more he could do

for Petitioner, before ending the phone conversation. (*Id.*) Thereafter, Petitioner scrambled to put together the *habeas* petition on his own, despite his limited abilities and resources. (*Id.*)

Based on the aforementioned events and the relevant precedent on equitable tolling, the Court determines that "extraordinary circumstances" were present, that Petitioner "acted with reasonable diligence, and that the extraordinary circumstances caused his petition to be untimely." *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003); *see also Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (indicating that "an attorney's failure [to keep his client reasonably informed about the status of the case and] failure to file a habeas petition on behalf of a prisoner despite explicit directions from the prisoner to do so" is a circumstance justifying equitable tolling). The Court will therefore proceed to address Petitioner's claims on the merits.

## II. Right to Fair Trial

### A. Out-of-Court Identification Procedures

Petitioner first argues that his due process right to a fair trial was violated because he was subjected to unduly suggestive and police-arranged out-of-court identification procedures that were unreliable, and that he is therefore entitled to *habeas* relief. (Pet., at ECF 5.) Because the Second Department rejected this claim on the merits, *Ainsley*, 18 N.Y.S.3d at 182–83, that court's decision is entitled to AEDPA deference. *See* § 2254(d); *Eze*, 321 F.3d at 121.

The facts underlying this claim are as follows. At the pre-trial *Wade* hearing,[8] Detective John McGurran ("Det. McGurran") testified that after the shooting, he went to Kings County Hospital (the "hospital") to see the victim. (Tr., at ECF 122.) The victim then stated that there were photos from inside the club on the night of the shooting that had been posted online, and that

---

[8] "The purpose of a *Wade* hearing is to determine before the trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification." *Lynn v. Bliden*, 443 F.3d 238, 248 (2d Cir. 2006) (quotations and brackets omitted).

the man who shot him (the "shooter") was in one of the photos. (*Id.* at ECF 124.) Approximately one week later, Det. McGurran returned to the hospital to speak with the victim as well as another witness to the shooting. (*Id.* at ECF 125.) The victim provided Det. McGurran with the name of the website that had posted the pictures, and the witness showed Det. McGurran a photo of the shooter that had been downloaded to the witness's cellphone. (*Id.*) Neither the victim nor the witness knew the shooter's name. (*Id.*) Det. McGurran then testified that while at the hospital, he showed a photo array to the victim, but Petitioner's photo was not in the array. (*Id.* at ECF 141.) According to Det. McGurran, the victim then stated that he did not recognize anyone in the array (*id.*), but that at least one of the individuals in the array[9] resembled the shooter (*id.* at ECF 141–42, 331). The victim subsequently identified Petitioner as the shooter during a lineup procedure at the precinct. (*Id.* at ECF 133–34, 157.)

The hearing court denied Petitioner's claim that the lineup was unduly suggestive as having been tainted by the victim telling Det. McGurran beforehand that at least one person from the photo array looked like the shooter. At the hearing, the court told Petitioner's trial counsel that "that [fact] might be a good issue you might want to bring out in front of a jury, but it is not relevant for the constitutional issues, or whether or not the lineup here was unduly suggestive." (*Id.* at ECF 142.) Petitioner raised this issue on direct appeal. (R., at ECF 838.)

The Second Department rejected this claim on the following grounds:

On appeal, [Petitioner] challenges, inter alia, the hearing court's determination that the police had probable cause to arrest him and that the lineup was not unduly

---

[9] Testimony at trial was inconclusive as to whether the victim stated that one or two individuals in the photo array resembled Petitioner. (*Compare* Tr., at ECF 141–42 ("My understanding from reading the detective's DD5, is that there is an indication by Mr. Hay, that *someone* resembles the shooter, but he is not sure. (emphasis added)), *with* Tr., at ECF 331 ("According to Detective McGurr[a]n's DD5, he showed this photo array to Mr. Hay, and Mr. Hay did, indeed make statements as a result of seeing it and said number four and number six resemble the shooter.").)

suggestive. Contrary to [Petitioner']s contention, the hearing court properly determined that there was probable cause for his arrest and, accordingly, properly denied that branch of his omnibus motion which was to suppress the lineup identification evidence as the product of an illegal arrest. The hearing court also properly denied that branch of the defendant's omnibus motion which was to suppress the lineup identification evidence, made on the ground that the lineup was unduly suggestive. While lineup participants should have the same general physical characteristics as those of the suspect, there is no requirement that a defendant in a lineup be surrounded by individuals nearly identical in appearance. Here, the photographs taken of the lineup reflect that the fillers sufficiently resembled the [Petitioner] such that the lineup was not unduly suggestive.

*Ainsley*, 18 N.Y.S.3d at 182–83 (citations to state-court decisions omitted).

The Court holds that the Second Department's reasoning with respect to this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceedings. As the Second Circuit has explained, when applying the constitutional standards for the admission of eyewitness testimony, a federal court on *habeas* review must proceed in two stages:

The court must first determine whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator. If the procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility; no further inquiry by the court is required, and the reliability of properly admitted eyewitness identification, like the credibility of other parts of the prosecutor's case is a matter for the jury. If the court finds, however, that the procedures were unnecessarily suggestive, it must then determine whether the identification was nonetheless independently reliable. In sum, the identification evidence will be admissible if (a) the procedures were not unnecessarily suggestive or (b) the identification has independent reliability.

*Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009) (quotation and brackets omitted).

Here, Petitioner's claim fails at the first stage, as there was nothing unduly suggestive about the eyewitness identification procedures the prosecution used. Indeed, when presented with the photo array, the victim did not identify *anyone*—least of all Petitioner (who was not even in the array); he stated that at least one of the individuals shown to him in the array resembled the shooter,

which merely indicates that the victim had some notion as to what the shooter looked like. (Tr., at ECF 141–42, 331.) *See Brown v. Fisher*, No. 13-CV-2071 (NSR) (PED), 2015 WL 3619628, at *2 (E.D.N.Y. June 9, 2015) (holding that photo array was not unduly suggestive, even where "the array contained Petitioner's photo," because it also contained photos "of five other men who all appear[ed] to be of similar age and build, and who have similar skin tone, hairstyles, and facial hair"). Indeed, even accepting the implicit assumption in Petitioner's claim—*i.e.*, that after the victim told Det. McGurran that at least one of the individuals in the photo array looked like the shooter, Det. McGurran sought to populate the lineup with fillers who looked like the individual(s) identified as bearing a resemblance to Petitioner—that would not be unduly suggestive or improper. Rather, it would appear to be the hallmark of good detective work.

Furthermore, even if the photo array had been unduly suggestive, the identification of Petitioner in the lineup was reliable for reasons separate from the photo array. Det. McGurran testified that it was the victim who gave him the name of the website that posted Petitioner's photo online and that the witness showed Det. McGurran a photo of Petitioner that was downloaded on a cell phone. (Tr., at ECF 125, 166.) Furthermore, the victim wrote down the shooter's license plate number and provide it to Det. McGurran, which prompted Det. McGurran to locate Petitioner's car and identify Petitioner as the man in the cellphone photo. (*Id.* at ECF 126–28.) Finally, at the precinct lineup, the victim identified Petitioner as the shooter. (*Id.* at ECF 133–3, 157.) The Court therefore concludes that because the victim's lineup identification of Petitioner was reliable for reasons independent of the photo array identification, it did not violate Petitioner's due process rights. *See Kelly v. Lee*, No. 11-CV-3903 (CBA), 2014 WL 4699952, at *10 (E.D.N.Y. Sept. 22, 2014) (rejecting such a claim where "[r]egardless of the procedure used in connection with the photo array shown to [the identifying witness]—the circumstances of which [Petitioner]

has not provided to this Court—[the identifying witness's] identification was independently reliable").

In sum, Petitioner has presented the Court with no caselaw, and the Court has been unable to locate any on its own independent review, suggesting that the trial court's admission of the victim's lineup identification of Petitioner violates clearly established Supreme Court precedent. Nor has Petitioner demonstrated that the trial court's decision was based on an unreasonable determination of the facts in light of the evidence presented at the *Wade* hearing.

Accordingly, the Court denies Petitioner's request for *habeas* relief based on his due process claim relating to the identification procedures used in his case.

### B. Inability to Call Witnesses

Petitioner also contends that he was denied his due process right to a fair trial because the trial court failed to "allow defense and/or alibi witnesses to testify." (Pet., at ECF 5.) Because the Second Department rejected this claim on the merits, *Ainsley*, 18 N.Y.S.3d at 183, that court's decision is entitled to AEDPA deference. *See* § 2254(d); *Eze*, 321 F.3d at 121. To obtain *habeas* relief for the exclusion of witnesses for the defense, a petitioner must demonstrate that the error was not harmless. *See Noble v. Kelly*, 89 F. Supp. 2d 443, 458 (S.D.N.Y. 2000), *aff'd*, 246 F.3d 93, 98 (2d Cir. 2001). Meeting this standard requires a petitioner to show that the error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993) (quotation omitted). "Whether the exclusion of witnesses' testimony violated [a criminal] defendant's right to present a defense depends upon whether the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist." *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001) (quotations and brackets omitted). Petitioner argues that he was precluded from calling witnesses who would have

testified that he was inside the club when the shooting took place, thereby suggesting that Petitioner could not have been the shooter because he was not outside where the shooting occurred. (Petitioner's Memorandum of Law in Support of *Habeas* Petition ("Pet'r's Mem. of Law in Supp. of Pet."), Dkt. 13, at ECF 1004–05.) Relatedly, Petitioner argues that he was prevented from calling a number of witnesses who would have testified that the victim had argued with several individuals other than Petitioner shortly before the shooting took place, which would similarly suggest that the shooter could have been someone other than Petitioner.[10] (*Id.* at 1006–08.)

The Court assumes, without deciding, that the trial court's preclusion of this witness testimony was error, and instead focuses on harmlessness. The Second Department addressed harmlessness explicitly, reasoning that:

> Although the trial court erred when it precluded [Petitioner] from calling a witness who would have testified that the [victim] exchanged angry words with another patron in the nightclub prior to the shooting and about when [Petitioner] left the nightclub in relation to when the [victim] departed, the error was harmless. The evidence of [Petitioner's] guilt included, among other things, the eyewitness testimony of the [victim] and his friend [the witness, described in Part II.A., *supra*] identifying [Petitioner] as the shooter, first to the police by providing the police with a picture of [Petitioner] which led to [Petitioner's] arrest, and later, by the [victim], at a lineup and, thereafter, by both the [victim], and his friend at trial; the video from the []club's security camera that captured the entire altercation; and the DNA on the hat that fell off the shooter and was left behind at the crime scene which matched [Petitioner's] DNA. The evidence of [Petitioner's] guilt was overwhelming, and there is no reasonable probability that the error in precluding the proffered witness might have contributed to [Petitioner's] conviction.

*Ainsley*, 18 N.Y.S.3d at 183 (citations to state-court decisions omitted).

The Court holds that the Second Department's finding of harmlessness was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent;

---

[10] Petitioner argues that these witnesses were erroneously excluded on hearsay grounds. (Pet'r's Mem. of Law in Supp. of Pet, at ECF 1006).

nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceedings. Even had the defense witnesses testified, the Court is satisfied that, given the substantial inculpatory evidence, some of which was unimpeachable—*e.g.*, DNA and video evidence—a guilty verdict would have nevertheless been sufficiently likely, rendering *habeas* relief on this claim inappropriate. This is not "a close case," where "additional evidence of relatively minor importance might be sufficient to a create a reasonable doubt" as to Petitioner's guilt at trial. *Schriver*, 255 F.3d at 45 (quotation omitted). In light of the overwhelming evidence pointing to Petitioner's guilt—including eyewitness identification, video from the club's security camera in which Petitioner was identified, as well as DNA evidence inculpating Petitioner—the Court holds that any errors the trial court made in precluding Petitioner from calling certain witnesses did not have "a substantial and injurious effect on the jury's verdict." *United States v. Blackwell*, 459 F.3d 739, 769 (6th Cir. 2006).[11] *Habeas* relief is thus denied on this claim.

### C. Preclusion of Police Report

Petitioner contends that he was denied the right to a fair trial by the trial court's preclusion of a police report that would have impeached the victim's testimony regarding his description of the shooter. (Pet. at ECF 7 (referencing R., at ECF 827).) Because the Second Department rejected this claim on the merits, *Ainsley*, 18 N.Y.S.3d at 183, that court's decision is entitled to AEDPA deference. *See* § 2254(d); *Eze*, 321 F.3d at 121.

---

[11] Furthermore, with respect to the witnesses who would have testified that Petitioner was inside when the shooting occurred, Petitioner himself acknowledges that the trial court precluded these witnesses because Petitioner failed to comply with procedural requirements under state law. (Pet'r's Mem. of Law in Supp. of Pet., at ECF 1005.) Thus, this argument additionally fails to warrant *habeas* relief for the separate reason that it is procedurally barred. *See Beard v. Kindler*, 558 U.S. 53, 55 (2009) ("A federal habeas court will not review a claim rejected by the state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." (quotation and brackets omitted)).

The Court holds that the Second Department's rejection of this argument was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceedings. The police report at issue memorialized the victim's responses to a photo array conducted by Det. McGurran, described in Part II.A, *supra*, in which the victim did not identify anyone in the array as the shooter but said that at least one individual the array resembled the shooter. (Tr., at ECF 141–42, 331, 285–86, 467–69.) The trial court excluded the admission of the victim's statement during the photo array procedure based on defense counsel's failure to establish a proper foundation for it during the victim's testimony (*id.* at ECF 285–87), and again during the testimony of Det. McGurran, who drafted the police report, after he testified in a manner consistent with the report's contents (*id.* at ECF 468–69). The Second Department concluded that the trial court *did* err in failing to allow this police report into evidence, but that the error was harmless. The appellate court reasoned as follows:

> The trial court should have allowed into evidence a police report offered by [Petitioner], in which a detective recorded the [victim's] statements when he viewed a photo array. [Petitioner] alleges that the report contains the [victim's] description of the shooter, which was inconsistent with the [victim's] testimony at trial. However, for the reasons noted above, the failure to admit this evidence also was harmless error.

*Ainsley*, 18 N.Y.S.3d at 183 (citations to state-court decisions omitted).

Incorporating its harmlessness analysis from Part II.B, *supra*, the Court denies *habeas* relief on this claim. "In light of the overwhelming evidence" pointing to Petitioner's guilt— including eyewitness identification, video from the club's security camera in which Petitioner was identified, as well as DNA evidence inculpating Petitioner—the Court holds that any errors the

trial court made in precluding Petitioner from admitting the police report did not have "a substantial and injurious effect on the jury's verdict." *Blackwell*, 459 F.3d at 769.[12]

### D. Jury Instruction

Petitioner next argues that the trial court erred in its instruction to the jury on intent, because the court erroneously used the facts of the case to provide an example of intent. (Pet., at ECF 7 (referring to R., at ECF 839–40).) Because the Second Department rejected this claim on the merits, *Ainsley*, 18 N.Y.S.3d at 183–84, that court's decision is entitled to AEDPA deference. *See* § 2254(d); *Eze*, 321 F.3d at 121.

"'In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law.'" *Smith v. Herbert*, 275 F. Supp. 2d 361, 369 (E.D.N.Y. 2003) (quoting *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 1985)). "To be entitled to federal habeas relief, a petitioner must show not merely that a particular jury instruction is 'undesirable, erroneous, or even universally condemned,' but also that it violated some right that was guaranteed to him by the federal constitution." *Russo v. Zon*, No. 05-CV-0293 (MAT), 2009 WL 3614527, at *12 (W.D.N.Y. Oct. 26, 2009) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)).

The jury charge Petitioner challenges provided as follows:

The first count on the verdict sheet charges the defendant with Attempted Murder in the Second Degree. A person is guilty of attempted Murder in the Second Degree when, with the intent to cause the death of another person, the defendant does something that tends to affect, or bring about that person's death. Now a person

---

[12] The Court notes that, at trial, the jury *did* hear testimony regarding the contents of the police report—in which the victim stated that two people in the photo resembled the shooter—and therefore the jury was free to draw the inference sought by Petitioner, to wit: that the victim had testified inconsistently with his prior statement. (Tr., at ECF 678–79.)

act[ed] intentionally when[] his conscious aim[] or objective is to engage in certain conduct. Now you cannot see someone's intent, because it is in the person's mind.

As to whether or not the defendant acted intentional[ly], you have to consider all the facts leading up to, surrounding, and following the occurrence in question. You may consider the acts and comments of the defendant before, during, and after the occurrence. What did the defendant say, and the actual results that w[ere] caused. There is no minimum time period, alright, for intent to kill to exist. Nor does it have to be planned in advance, nor does it have to be premeditated. But the Prosecution must prove, beyond a reasonable doubt, that at some point the defendant had the conscious objective of killing Mr. Hay. *And that the defendant acted upon that intent by doing something[,] such as shooting a firearm, in an attempt to cause Mr. Hay's death.*

Now conduct which tends to affect the commission of a crime means, conduct that comes so dangerously close, or very near to the completion of the intended crime. So, if a person intends to commit a crime and engages in conduct which carries its purpose forward within dangerous proximity to the completion of the intended crime, he is guilty of an attempt to commit that crime. It does not matter that the intended crime was not actually committed.

The fact that the intended target was not killed is not a defense in the case. The defendant's conduct must be directed toward the accomplishment of the intended crime, but it need not be the last act necessary to affect the actual commission of the intended crime. Rather, the conduct involved must go far enough that it comes dangerously close, or very near to the completion of the intended crime.

So, in order for you to find the defendant guilty of this crime, the People are required to prove, from all the evidence in the case, beyond a reasonable doubt, the following two elements: That one, that on or about February 13, 2012, in the County of Kings, the defendant shot a firearm in the direction of Mr. Hay. And two, [that] the defendant acted with the intent to kill Mr. Hay.

(Tr., at ECF 720–22 (emphasis added).)

The Court holds that the Second Department's rejection of Petitioner's argument as to this jury instruction was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceedings. Under New York law, a person is guilty of Attempted Murder in the Second Degree where, "with intent to commit [Second Degree Murder], he engages in conduct which tends to effect the commission of" Second Degree

Murder, which is defined as "caus[ing] the death of such person or of a third person." N.Y. Penal Law §§ 110, 125.25(1). The Court finds that the jury instruction given by the trial court was properly described the required element of intent as it relates to the commission of this crime. That the trial court particularized the instruction, based on the prosecution's theory of case and what the jury was required to determine, *i.e.*, whether Petitioner had effected the crime by "shooting a firearm," was perfectly appropriate and not prejudicial. *Habeas* relief is thus denied on this claim. *See McRae v. Senkowski*, No. 01-CV-2916 (GWG), 2002 WL 1880730, at *12 (S.D.N.Y. Aug. 15, 2002) (rejecting similar argument on *habeas* review where "the jury instruction did not misstate state law" (quotation and brackets omitted)).

### E. Summation

Petitioner next argues that various comments made by the prosecutor in summation deprived Petitioner of a right to fair trial, because these comments had the effect of, *inter alia*, sensationalizing details of the crime, directing the jury to draw conclusions about the credibility of various witnesses, and misstating the burden of proof. (Pet., at ECF 7 (referencing R., at ECF 840–44).) To the extent Petitioner objected to these statements at trial, the Second Department rejected this claim on the merits; to the extent Petitioner did not object to these statements at trial, the Second Department held this claim was unpreserved for review under the contemporaneous objection rule. *See Ainsley*, 18 N.Y.S.3d at 184 (disposing of Petitioner's arguments underpinning this claim as "either unpreserved for appellate review or without merit").

#### 1. Procedural Bar

"A federal habeas court will not review a claim rejected by the state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (quotation and brackets

omitted). On direct appeal, the Second Department rejected all of Petitioner's contentions regarding the alleged impropriety of the prosecutor's summation, explaining that these arguments were "either unpreserved for appellate review or without merit." *Ainsley*, 18 N.Y.S.3d at 184. To the extent the Second Department determined that these arguments were unpreserved for review, it based its ruling on New York's "contemporaneous objection rule," which provides that an objection is preserved if the objecting party "(1) made his or her position regarding the ruling known to the trial court; (2) made a protest, and the trial court 'expressly decided the question raised on appeal'; or (3) 'without success . . . either expressly or impliedly sought or requested a particular ruling." *Downs v. Lape*, 657 F.3d 97, 102–03 (2d Cir. 2011) (quoting N.Y. Crim. Proc. L. § 470.05(2)).

The Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule" and has observed "that the rule constitute[s] an independent ground for disposing of" a petitioner's claim on *habeas* review. *Downs*, 657 F.3d at 104; *see also Garcia v. Lewis*, 188 F.3d 71, 78 (2d Cir. 1999) ("if a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with a contemporaneous objection rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review" (quotations and brackets omitted)). The Court therefore declines to consider arguments regarding the alleged impropriety of the prosecutor's summation to the extent these arguments were not brought to the trial court's attention. *See Torres v. Racette*, No. 11-CV-1647 (PKC), 2018 WL 4762246, at *4 (E.D.N.Y. Oct. 2, 2018) (holding that "the Court is precluded from reaching the merits of Petitioner's" claims where "Petitioner did not object to the allegedly improper . . . testimony or summation remarks, and, therefore, pursuant to New York Criminal Procedure Law § 470.05(2),

both of Petitioner's claims are unpreserved"); *Cromwell v. Smith*, No. 13-CV-29 (KBF), 2014 WL 1280287, at *9 (S.D.N.Y. Mar. 25, 2014) ("[B]ecause there is no dispute that petitioner failed to object to the evidence [at trial], the contemporaneous objection rule provides an adequate and independent ground to support the Appellate Division's rejection of the petitioner's claims.").

Accordingly, the Court denies Petitioner *habeas* relief on the basis of his due process claim relating to the prosecutor's summation remarks to which he did not object at trial.

### 2. Merits

To the extent Petitioner objected to the prosecutor's summation at trial, the Second Department rejected his claim on the merits and that court's decision is therefore entitled to AEDPA deference. *See* § 2254(d); *Eze*, 321 F.3d at 121. Under relevant precedent,

> it is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. Moreover, the appropriate standard of review for such a claim on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quotations and citations omitted).

The Court holds that the Second Department's rejection of Petitioner's preserved objections as to the prosecutor's summation was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceedings. Petitioner to objected to the following statements made by the prosecutor:

> You heard from Robert Hindle, the guy from the [Office of the Chief Medical Examiner], DNA lab. And he found there was DNA recovered on this hat, the hat on defendant's head. You heard from the DNA expert, and the expert told you the DNA found on that hat belongs to the defendant. If there is any doubt of who dropped the hat at the corner of 89th and Ditmas, Bob Hindle answered that for you, the DNA all on the inner side of this hat belongs to the defendant. That is the one who dropped it on that corner. …

But in terms of who wore the hat last, sure, Mr. Hindle may not be able to answer that for you. But use your only judgment, use your common sense. You saw from the chart how much DNA is on defendant's hat. Do you think if someone else was wearing that hat last, you might see some other peaks? But no, the peaks are the defendant's. Use your common sense. Who do you think was the last person that wore this hat last, the person[] whose DNA is on the hat. …

Now, had [Det. McGurran] had the benefit of watching the video, he would have realized, chasing this [license] plate down, chasing this car down was never going to get him the shooter, because the shooter never left in that car, the shooter left by some other means. …

So sitting here and doting it on Jermaine Ainsley, why something wasn't done with him, why someone didn't take his DNA, why someone didn't arrest him, why didn't someone put him in a lineup, this is taking your focus away. Jermaine Ainsley is not the issue. There is no connecting him to the shooting. …

The Judge is going to tell you that I don't have to prove motive, I don't, it is not an element of the crime. I don't have to prove to you what was going through this man's head that made him decide to pull out a gun and shoot [the victim]. I don't have to prove it to you. You heard some testimony about it, but I don't have to prove it to you. The big deal [defense counsel] made, where is the girl? Remember what the charge tells you, I don't have to prove motive. And use your own common sense, your experiences. We all live in Brooklyn, we know people have gotten shot for much less than over a wom[a]n. …

Physical injury, we have the medical records in evidence. You can read about the surgery that he went through. You can read about the fluid in his lungs. You can read about the blood in his lungs. But remember, both parties stipulated, meaning, we both agreed that the injuries that [the victim] sustained were serious physical injury. So, again, Assault in the First Degree, that is an easy one. The next charge is Murder in the Second Degree.

(Tr., at ECF 687–88, 689, 691–92, 695–96, 698, 700–01.)

The Court holds that the aforementioned statements did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014) (quotations omitted). The prosecutor was allowed to argue that the DNA evidence inculpated Petitioner. *See United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (recognizing that the prosecution "may be passionate in arguing that the evidence supports a conviction"). The prosecutor was also allowed to ask the jury to draw inferences from Det.

McGurran's testimony and disregard inferences defense counsel asked the jury to make. *See Bohan v. Kuhlmann*, 234 F. Supp. 2d 231, 270 (S.D.N.Y. 2002) ("[A] prosecutor may comment on the evidence presented and ask the jury to draw inferences from it."). To the extent the prosecutor stated that the government did not bear the burden of proof, the Court deems that error cured by the trial court's repeated exhortation to the jury during its charge that it was the prosecution's burden to prove each element of each charge beyond a reasonable doubt in order to secure a conviction. (*E.g.*, Tr., at ECF 705, 706, 708, 712, 713, 715, 716, 719, 721, 722, 723, 724, 726, 728, 731.) *See Gaviria v. Lee*, No. 11-CV-1683 (RJD), 2014 WL 1653252, at *3 (E.D.N.Y. Apr. 23, 2014) ("The record [] shows that the trial court instructed the jury on the presumption of innocence at the voir dire stage, at the commencement of trial, and again in the instructions given just prior to the deliberations. A jury is presumed to follow its instructions." (quotation omitted)).

Accordingly, Petitioner's argument that various comments made by the prosecutor in summation deprived Petitioner of a right to fair trial does not entitle him to *habeas* relief.

## III. Ineffective Assistance of Trial Counsel

Petitioner next argues that his trial counsel was ineffective for failing to investigate Petitioner's alibi and call certain witnesses. Specifically, Petitioner argues that his attorney failed to file a notice of alibi, which prevented the presentation of an alibi defense at trial, and failed to call certain defense witnesses who would have testified to the existence of other probable suspects. (Pet., at ECF 7 (referring to R., at ECF 812–17).) According to Petitioner, this conduct amounted to ineffective assistance of counsel and warrants *habeas* relief. Because the Second Department rejected this claim on the merits, *Ainsley*, 18 N.Y.S.3d at 184, that court's decision is entitled to AEDPA deference. *See* § 2254(d); *Eze*, 321 F.3d at 121.

To establish an ineffective-assistance claim, "the likelihood of a different result in the absence of the alleged deficiencies in representation 'must be substantial, not just conceivable.'" *Waiters v. Lee*, 857 F.3d 466, 469 (2d Cir. 2017) (quoting *Harrington*, 562 U.S. at 112); *see also Strickland v. Washington*, 466 U.S. 668, 693 (1984) ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."). To demonstrate that *habeas* relief is appropriate on this basis, Petitioner "must show 1) that his attorney's performance fell [] below an objective standard of reasonableness, and 2) that there was prejudice, [] meaning a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Tavarez v. Larkin*, 814 F.3d 644, 648 (2d Cir. 2016) (quotations and citations omitted).

The Court holds that the Second Department's rejection of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceedings. First, Petitioner has not demonstrated that his trial counsel's failure to present alibi witnesses at trial rendered trial counsel constitutionally ineffective. Indeed, "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Messina*, 131 F.3d 36, 41 (2d Cir. 1997) (quotation omitted).

Second, even if failure to file the alibi notice rendered trial counsel's performance ineffective, Petitioner has not met the applicable standard on the prejudice prong. As the Court explained in Part II.B, *supra*, substantial evidence of Petitioner's guilt was introduced at trial, including unimpeachable evidence in the form of video and DNA. The Court is therefore not persuaded that, had trial counsel not made the alleged errors, the verdict at trial would have been

different.  *See United States v. Garcia*, 413 F.3d 201, 219 n.13 (2d Cir. 2005) (defendant raising ineffective assistance claim must demonstrate, *inter alia*, that "but for counsel's unprofessional errors, the result of the proceeding would have been different") (quotations omitted)).

*Habeas* relief is thus denied on Petitioner's ineffective assistance of counsel claim.

## IV.    *Brady* Violation

Petitioner argues that he was convicted in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), because the prosecutor failed to turn over exculpatory information to the defense prior to trial. (Pet., at ECF 5 (referring to R., at ECF 948–54).) Petitioner specifically argues that the prosecutor deliberately failed to disclose to the defense that Det. McGurran improperly coached the victim to identify Petitioner during the lineup procedure. (R., at ECF 948–54.) Because the Second Department rejected this claim on the merits, *Ainsley*, 18 N.Y.S.3d at 184, that court's decision is entitled to AEDPA deference. *See* § 2254(d); *Eze*, 321 F.3d at 121.

As the Second Circuit has summarized,

Well-established Supreme Court precedent holds that the prosecution has a clear and unconditional duty to disclose all material, exculpatory evidence. This duty exists whether or not the defense requests exculpatory evidence. The Supreme Court has never required a defendant to exercise due diligence to obtain *Brady* material.

To be sure, we have held in several cases that evidence is not suppressed for *Brady* purposes if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of exculpatory evidence. The 'knew' prong of this requirement is subjective, and the 'should have known' prong is objective— meaning that, if a reasonable defendant in these circumstances should have known the relevant facts, then the prosecution's failure to disclose that evidence does not implicate *Brady*. This requirement speaks to facts already within the defendant's purview, not those that might be unearthed. It imposes no duty upon a defendant, who was reasonably unaware of exculpatory information, to take affirmative steps to seek out and uncover such information in the possession of the prosecution in order to prevail under *Brady*.

*Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (citations, brackets, and italics omitted).

The facts underlying Petitioner's *Brady* claim are as follows. According to Petitioner, "Detective McGurran ha[d] been accused in several cases of conducting suggestive identification, which resulted in the dismissal of indictments. On November 25, 2014, the People dismissed an indictment of a shooting suspect because Detective McGurran improperly coached a witness to pick out a certain person during a lineup." (R., at ECF 949.) Analogizing to the proceedings in his case, Petitioner contends that the victim "first picked two other people as resembling the shooter in a photo array conducted by Detective McGurran and later changed his mind at the second lineup conducted by Detective McGurran." (*Id.*) Petitioner goes on to explain that the victim "testified in [c]ourt that, prior to viewing the lineup, he was told by Detective McGurran[,] 'We have the shooter.'" (*Id.*) Petitioner concludes with the contention that "[t]he People were clearly aware of Detective McGurran's misconduct and failed to disclose the information to the defense." (*Id.*)

The Court holds that the Second Department's rejection of Petitioner's *Brady* claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceedings. "There are three components of a true *Brady* violation": (1) "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) "that evidence must have been suppressed by the State, either willfully or inadvertently; and" (3) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

With respect to the case in which an indictment was dismissed based on Det. McGurran's coaching of a witness to select a specific individual during a lineup, that dismissal occurred on November 25, 2014—more than one year *after* the jury convicted Petitioner in this case. (R., at ECF 949.) Assuming, *arguendo*, that the information about an investigation into Det. McGurran's coaching of a witness at a lineup was exculpatory as to Petitioner, this information could not have been "suppressed" by the prosecution—either willfully or inadvertently—because, based on the evidence before the Court, the information did not come to light until after Petitioner was convicted.[13] *See Cox v. Ebert*, No. 06-CV-3159 (PAC) (JCF), 2010 WL 3119445, at *5 (S.D.N.Y. Aug. 5, 2010) ("[Petitioner]'s *Brady* claim fails because the prosecution did not suppress any exculpatory evidence.").

Moreover, the Court is doubtful that, even had this information been provided to the defense, the jury's guilty verdict would have been different. *See United States v. Rodriguez*, 496 F.3d 221, 227 (2d Cir. 2007) ("A *Brady* violation occurs only where there is a reasonable probability that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed." (quotation omitted)). First, prior to, and completely independent of, his lineup identification of Petitioner, the victim provided the police with a picture of Petitioner, which led to his arrest. *Ainsley*, 18 N.Y.S.3d at 183. Second, both the victim and his friend identified Petitioner as the shooter at trial. *Id.* Third, "the video from the nightclub's security camera . . . captured the entire altercation." *Id.* Fourth, Petitioner's DNA was "on the hat that fell off the shooter and was left behind at the crime scene[.]" *Id.* Based on the considerable

---

[13] While it is theoretically possible that the prosecution was aware of Det. McGurran's misconduct prior to the November 2014 dismissal and prior to Petitioner's conviction, there is no evidence before the Court to support either conclusion, and the Court cannot grant *habeas* relief based on sheer speculation.

evidence pointing to Petitioner's guilt, the Court holds that, even had the prosecution "suppressed evidence favorable to" Petitioner, relating to Det. McGurran's misconduct in a different investigation, "failure to disclose [that evidence] did not prejudice" Petitioner. *Graves v. Smith*, 811 F. Supp. 2d 601, 610 (E.D.N.Y. 2011).

*Habeas* relief is thus denied on Petitioner's *Brady* claim.[14]

## V.      Excessiveness of Sentence

Finally, Petitioner argues that his sentence is unfairly excessive. (Pet. at 7 (referencing R.., at ECF 845–47.) Petitioner's claim is not reviewable on a *habeas* petition because it fell within the statutory range provided under New York law. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."). Accordingly, the Court denies *habeas* relief on Petitioner's excessive sentence claim.

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is denied. Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability

---

[14] The Court's analysis of Petitioner's *Brady* claim necessarily disposes of any actual innocence claim advanced by Petitioner. Petitioner argues that the revelation that Det. McGurran had engaged in misconduct in the form of coaching a witness during a lineup identification amounted to the discovery of new evidence pointing to Petitioner's innocence. (Pet., at ECF 5 (referring to R.., to ECF 944).) This contention is meritless. At the outset, the Court notes that the Supreme Court "has never explicitly recognized the existence of a freestanding actual innocence claim," *Rivas*, 687 F.3d at 540 n.34, and has only recognized "actual innocence" in the context of excusing procedural default, *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993). In any event, the Court's conclusion that admission of the allegedly exculpatory material would not have affected the guilty verdict means that any such claim would fail in this case.

where petitioner has not shown that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (quotations and ellipsis omitted)). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: March 28, 2019
       Brooklyn, New York